UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Pamela Baxter,<br><br>  Plaintiff,<br><br>v.<br><br>Spring Valley Hospital and Medical Center, et al.,<br><br>  Defendants. | Case No.: 2:11-cv-1293-JAD-NJK<br><br>**Order Granting in Part Defendant's Motion for Summary Judgment [Doc. 36]** |

Pro se plaintiff Pamela Baxter was employed as a general surgical technician at Spring Valley Hospital and Medical Center from June 2, 2008, until she was terminated on September 21, 2010. Baxter alleges that Spring Valley failed to engage in a good-faith discussion with her regarding a reasonable accommodation for her then-recent diagnosis of a major depression disorder and post traumatic stress disorder; retaliated against her for filing a charge of discrimination with the EEOC; and ultimately terminated her because she is black. Doc. 9. Baxter asserts claims for race-based and disability-based discrimination and retaliatory discharge under the Americans with Disabilities Act (ADA), and she prays for a host of remedies including reinstatement and damages. *Id.* at 4.

The hospital moves for summary judgment on all of Baxter's claims. Doc. 36. It contends that Baxter did not engage in the good-faith, interactive process for a disability accommodation; the ten-month gap between her EEOC filing and her termination fatally undermines her retaliation

claim; and there is no proof that she was treated disparately due to her race. Docs. 36, 46. Baxter opposes the motion, disputing the hospital's version of the facts, attaching more than 100 pages of unauthenticated documents, and asking the court to find a genuine of issue of material fact and deny summary judgment. I find this motion appropriate for disposition without oral argument,[1] and I conclude that Spring Valley has demonstrated an absence of evidence to support Baxter's race-based discrimination claim, warranting summary judgment on that claim, but genuine issues of material fact preclude summary adjudication of her remaining claims.

## Discussion

**A.   Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2] When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[3] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts,"[4] she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[5] If reasonable minds could differ on the material facts at issue, summary judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed.[6]

---

[1] Nev. L.R. 78-2.

[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. Proc. 56(c)).

[3] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[4] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[5] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[6] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

## B.   Evidentiary-foundation Problems

Before I reach the merits of the parties' arguments, I must first address the sufficiency of their summary judgment papers. A party seeking to either support or refute the assertion that a fact is genuinely in dispute must do so with admissible evidence.[7] As the hospital points out in its reply, none of the approximately 120 pages of exhibits that Baxter submits with her opposition have been properly authenticated. Doc. 46 at 2. The hospital suggests that Baxter's failure to offer properly authenticated evidence is the natural consequence of her decision to conduct no discovery in this case. *Id*. Regardless of the reason for this deficiency, Spring Valley argues that the absence of authenticated evidence means there is no competent evidence to support Baxter's claims, and summary judgment is now required.

To authenticate a document, the proponent must offer "evidence sufficient to support a finding that the matter in question is what its proponent claims.'"[8] As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial;[9] thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity. Documents may be authenticated two ways: (1) through the personal knowledge of a party who attests that the document is what it purports to be; or (2) any other manner permitted by Federal Rules of Evidence 901(b) (which provides ten methods of authentication) or 902 (identifying self-authenticating documents that "require no extrinsic evidence of authenticity in

---

[7] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.*, 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009) (applying *Orr* to *prima facie* case in employment discrimination matter).

[8] *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011) (quoting Fed. R. Evid. 901(a)).

[9] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

order to be admitted").[10]  Documents authenticated through personal knowledge must be attached to an affidavit signed by a person with personal knowledge about the document (such as the drafter or signer of the document or the custodian of the document kept in the ordinary course of a business, depending on the type of document and its particular relevance), or properly authenticated deposition testimony in which the same information was elicited.[11]

Baxter has made no effort to authenticate her exhibits, and they do not appear to be self-authenticating.  Under Fed. R. Civ. Proc. 56(e), "[i]f a party fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and the supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order."[12]

In selecting among appropriate remedies, I cannot ignore the procedural history of this case.  Plaintiff has failed to respond to written discovery, *see* Doc. 47, failed to appear at hearings, Docs. 48, 49, 52, and been sanctioned for "vexatiously increas[ing] the cost of this litigation in bad faith by failing to attend hearings designed to improve the progress of the case."  Doc. 66.  Despite her

---

[10] Fed. R. Evid. 902 (listing domestic public documents that are sealed and signed or signed and certified; foreign public documents; certified copies of public records; official publications; newspapers and periodicals; trade inscriptions and the like; acknowledged or notarized documents; commercial paper and related documents; presumptions under a federal statute; and certified domestic or foreign records of a regularly conducted activity).

[11] *See Orr*, 285 F.3d at 773-74 ("[D]ocuments authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."); *see also id*. at 774 (deposition transcripts are authenticated "by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted.  It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.' Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.").

[12] *Id.*

1  unrepresented status, Baxter still is required to follow all rules of this court.[13]  Baxter's demonstrated

2  history of conduct in this case suggests that allowing her additional time to cure the defects in her

3  evidentiary submissions would not be fruitful and that the interests of both parties compel resolution

4  of this motion as presently briefed.[14]

**C.     Merits of the Hospital's Motion**

When evaluating a summary judgment motion in an employment discrimination action like this one, the court must employ the burden-shifting framework from *McDonnell Douglas Corp. v. Green*[15]:

> The employee must first establish a prima facie case of discrimination. If he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.[16]

This is a three-step process, the first of which requires the employee to establish a *prima facie* case of discrimination.[17]  The standard for establishing a *prima facie* case of Title VII disparate treatment

---

[13] *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."); *see also Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."); *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("[P]ro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.").

[14] Additionally, it is unlikely that even considering plaintiff's exhibits would alter the outcome of this motion.  Only plaintiff's racial discrimination claim is being resolved, and nothing in the unauthenticated exhibits supports that claim such that summary judgment would be prevented.

[15] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 201-04 (1973).

[16] *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and citations omitted).

[17] *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-52 (2003) (applying *McDonnell-Douglas* standard to ADA claim).

is not onerous.[18]  "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment."[19] "Establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee."[20]

Once a *prima facie* case has been established, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."[21]  The plaintiff must then show that the basis was either a mere pretext for engaging in the unlawful conduct or that the proffered explanation is unworthy of credence.[22]  She can meet this burden by presenting circumstantial evidence, which must be "specific and substantial."[23]  "A disparate[-]treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting her prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons."[24]  "Liability in a disparate-treatment case depends on whether the protected trait . . . actually motivated the employer's decision."[25]

---

[18] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (noting that *prima facie* burden is "minimal" and proof need not rise to the level of preponderance of the evidence).

[19] *Chuang v. University of California, Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000).

[20] *Burdine*, 450 U.S. at 254.

[21] *Chuang*, 225 F.3d at 1123-24; *Raytheon*, 540 U.S. at 50; *Burdine*, 450 U.S. at 254.

[22] *Burdine*, 450 U.S. at 256; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 746 (9th Cir. 2003).

[23] *Coughlan v. American Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).  The plaintiff may also provide direct evidence of such pretext, *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), but there is no direct evidence in this case so I need not consider this issue.

[24] *Chuang*, 225 F.3d at 1127 (emphasis in original).

[25] *Raytheon*, 540 U.S. at 52 (internal quotation marks omitted).

### 1. Baxter's Disability Discrimination Claim.

As her first claim, Baxter alleges that she was terminated because she "was diagnosed with a disability": major depression disorder and post-traumatic stress disorder. She claims that she requested an accommodation in the form of a 12-week leave of absence beginning on June 30, 2010, which was granted, but the hospital shortened her leave without engaging in the good-faith interactive process and just terminated her in violation of the ADA. Doc. 9 at 2-3. The hospital acknowledges that it originally granted Baxter FMLA leave through September 30th, but midway through Baxter's leave it realized it miscalculated the end date. It notified Baxter by letter that her leave ended September 21st and attempted to contact Baxter by phone with no success, and when Baxter did not return to work on September 21st, she was terminated. To state a *prima facie* case of disability discrimination under the ADA, Baxter must demonstrate that "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job [she] holds or seeks; and (3) [she] suffered an adverse employment action because of [her] disability."[26] The hospital's own facts establish Baxter's *prima facie* disability-discrimination claim.

#### a. *Prima Facie Case*

The hospital has never contended that Baxter's claimed disability was a sham, nor does it deny that it agreed to provide Baxter with medical leave beginning on June 30, 2010. Doc. 36 at 7; 36-1 at 3. Spring Valley offers the declaration of Nita Matthew, a Human Resources Generalist for Spring Valley, who attests that the hospital sent Baxter a letter stating that her FMLA leave of absence request had been "received and approved." Doc. 36-1 at 2, 23. Although the extent of Baxter's disability may not be established with competent evidence, the court can infer that Spring Valley would not have approved Baxter's FMLA leave request if it did not acknowledge that Baxter suffered from a disability. Thus, the record supports the conclusion that Baxter is disabled as contemplated by the ADA.

---

[26] *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000).

As to whether Baxter was qualified, Spring Valley points to a number of negative performance reviews, *see* Doc. 36 at 4-7, but never claims that it terminated her employment or told Baxter she would be terminated because she was not qualified to maintain her job. Matthew declares that when Baxter "appeared" in her office in early October following her termination, Matthew told Baxter she had been terminated but could reapply for open positions after 30 days. *See* Docs. 36 at 16-17; 36-1 at 3-4. Spring Valley also submits the declaration of Walter Bailey, its Nurse Manager, who attests that Baxter applied for an Open Heart Surgical Technician position in the spring of 2012, more than two years after her leave, and Spring Valley contacted her for an interview. Doc. 36-5, p. 2. It defies business logic for Spring Valley to have contacted Baxter for an interview if it did not believe that she was qualified for the position.[27]

Finally, Spring Valley never contests that Baxter's termination was an "adverse employment action," as it undisputedly was. Thus, the record establishes a *prima facie* case of disability discrimination.

### b.     *Legitimate Non-Discriminatory Reason*

Because Spring Valley's own evidence entitles Baxter to a presumption of disability discrimination for purposes of this motion, the court next considers whether the hospital articulated a legitimate, non-discriminatory basis for its decision to terminate Baxter's employment.[28] The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment."[29] This type of discrimination includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee, unless [the employer] can demonstrate

---

[27] Spring Valley contends in its reply that "a request for accommodation that comes after the employer is prepared to or has taken an adverse employment action, such as discipline or termination, comes too late." Doc. 46 at 4. This point is inapposite because, even though Spring Valley pointed to disciplinary action taken against Baxter prior to her June 30, 2010, request for leave, it never indicated that it was terminating her on that basis.

[28] *See Raytheon*, 540 U.S. at 52-54; *Dark v. Curry County*, 451 F.3d 1078, 1084 (9th Cir. 2006).

[29] 42 U.S.C. § 12112(a). Baxter claims to "dispute" the hospital's assertions that it attempted to contact her by phone or by mail, but has provided no contradictory evidence.

Page 8 of 16

that the accommodation would impose an undue hardship on the operation of [its] business."[30]

"[O]nce an employee requests an accommodation . . ., the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation."[31] This requires "(1) direct communication between the employer and the employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective."[32] "Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process."[33]

Spring Valley contends that Baxter's claim fails as a matter of law because it provided Baxter with a reasonable accommodation for her disability in the form of 12 weeks of FMLA leave. Docs. 36-1 at 3; 44 at 4.[34] The accommodation began on June 30, 2010, and the Hospital sent Baxter a letter confirming that her FMLA leave would expire on September 30th. Doc. 36-1 at ¶ 6. But in "late August," the hospital realized it miscalculated Baxter's return date—it was actually September 21st—and Matthew called Baxter and left a message cryptically asking Baxter to "contact [Spring Valley] about her leave." *Id.* Baxter returned the call and left a message for Matthew in return. *Id.* Matthew avers that she called Baxter back several times after that but never reached her. *Id.* So, on September 15, 2010, Spring Valley sent Baxter a certified letter that informed Baxter that her leave would terminate on September 21, 2010, and that she should

---

[30] *Id.* at § 12112(a)(A); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002).

[31] *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

[32] *Id.* (citations omitted).

[33] *Id.* The parties do not dispute that Baxter requested leave under the FMLA in June 2010, or that Spring Valley did not grant that request. Therefore, for purposes of summary judgment the second, "consideration" factor will not be discussed here.

[34] Spring Valley assumes for purposes of its Motion that Baxter has suffered a disability cognizable under the ADA. Baxter claims to "dispute" this fact, and contends that she was "taken off work" on July 1, 2010. Doc. 44 at 4. She does not otherwise contest that she was on FMLA leave at that time, however, and even assuming that there is a one-day discrepancy between June 30, 2010, and July 1, 2010, this difference is immaterial for present purposes.

communicate with Spring Valley prior to returning to work. Doc. 36-1 at 3, 23.[35] When Baxter did not return to work on September 21st, the hospital terminated her employment—a development that Baxter apparently was first personally informed of on October 1, 2010, when she returned to work; she claimed to have moved and not received the hospital's September 15th notification of the change to her leave-end date. *Id.* at ¶ 7-8.

The parties do not dispute that Baxter was given 12 weeks of leave, or whether this leave period was predicated by some discussion between Baxter and Spring Valley. Indeed, until late August, both Baxter and the hospital were under the singular understanding that Baxter's leave extended through the end of September. The unique question here is not whether the hospital initially afforded Baxter a reasonable accommodation, but whether it acted reasonably when unilaterally modifying that accommodation by cutting it short by nine days.

Overall, the accommodation process is designed to be an enterprise in "cooperative problem-solving" and is thus a continuing duty that may not be exhausted by a simple effort.[36] This good-faith process prohibits either side from delaying or obstructing the process.[37] Thus, an employer incurs liability for failing to reasonably accommodate an employee only where it is responsible for the breakdown in the communications process.[38]

Whether the hospital acted and communicated in good faith in the leave-modification process

---

[35] A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). "Essential functions" are "fundamental job duties of the employment position . . . not incud[ing] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 989 (9th Cir. 2007). An employer disputing a plaintiff's claimed ability to perform "essential functions" must provide the Court with evidence establishing those functions. *Bates*, 511 F.3d at 991.

[36] *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001).

[37] *Barnett v. U.S. Airways*, 228 F.3d 1105, 1114 (9th Cir. 2000); *Allen v. Pacific Bell*, 348 F.3d 1113, 1114-15 (9th Cir. 2003) (finding that where employee failed to submit medical forms demonstrating improvement in medical condition, employer was not required to accept employee's unsubstantiated statements regarding his medical condition). In at least one unpublished case, a Ninth Circuit panel concluded that an employer did not engage in the accommodation process in good faith where, for example, the employer never told the employee that her leave of absence request was submitted on the wrong form. *See Cox v. Wal-Mart Stores Inc.*, 441 F. App'x 547, 549 (9th Cir. 2011).

[38] *See Zivkovic*, 302 F.3d at 1089.

1   is a question of fact that cannot be resolved on summary judgment.  Matthew declares that she left a
2   message on Baxter's phone "in late August" in which she asked Baxter to contact her "*about her*
3   *leave*."  Doc. 36-1 at 3 (emphasis added).  Baxter then returned the call, leaving a message.  *Id.*  The
4   contents of Matthew's phone message and Baxter's response are not described in her declaration;
5   and, construing all reasonable doubts and inferences in Baxter's favor as I must, it is not clear
6   whether Matthew explicitly told Baxter that her FMLA end date had been changed.  Even if
7   Matthew explicitly communicated the change, it is equally reasonable to conclude that Baxter
8   attempted to negotiate a further accommodation.

9   Matthew then left one more message on Baxter's machine "in late August or early September."
10  *Id.*  This message is also described through the cryptic phrase "about her leave."  Receiving no
11  response, Spring Valley then attempted, on an unspecified date, to contact Baxter again by
12  telephone,  only to discover that Baxter's "phone number was not working."  *Id.*  It is not clear when
13  this phone call occurred, but the next time Spring Valley attempted to contact Baxter was on
14  September 15, 2010, when Matthew claims that she sent Baxter a letter via certified mail.  *Id.* at 3.

15  Spring Valley's "certified mail" stamp contains only the first line of Baxter's address, and does
16  not indicate when the letter was actually mailed or when it was delivered, if in fact it ever was.  *Id.*
17  at 23.  Moreover, the letter Spring Valley sent never references Spring Valley's prior
18  communications; fails to indicate that the leave period was previously miscalculated; and references
19  an "extension" of the leave period until September 21, 2010.  *Id.* at 23.  None of these incongruities
20  is resolved by Matthew's declaration.

21  Had Spring Valley proffered evidence that it explicitly communicated with Baxter about the
22  modification to her FMLA date, the court might be able to conclude that Baxter failed to engage in
23  the accommodation process in good faith, which she was obligated to do.  However, construing all
24  reasonable doubts and inferences in Baxter's favor, it is not clear that Baxter (1) was properly
25  informed of the change in her leave-end date or (2) made no reasonable efforts to communicate
26  about these dates even if she was informed.  Thus, a material question of fact remains as to whether
27  responsibility for the breakdown in communication rests with Baxter or her employer.

28

And when the hospital's stated reason for terminating Baxter is her failure to timely return to work after the shortened leave period ended, and the legitimacy of that reason is questionable, the court need not reach the third stage of the *McDonnell Douglas* burden-shifting test. Spring Valley's request for summary judgment on Baxter's disability-discrimination claim is denied.

### 2. Baxter's Retaliation Claim

As her second claim, Baxter alleges her termination was retaliation for her filing of a charge of discrimination with the EEOC in "early 2010," in which she claimed that she was being discriminated against on account of her race and that Spring Valley refused to allow her to change her hours so that she could care for her disabled son. *Id.* at 2. To make out a *prima facie* case of retaliation, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two.[39] This burden is not onerous.[40]

#### *a. Prima facie case*

Spring Valley does not deny that filing a charge with the EEOC was a "protected activity" or that Baxter suffered an "adverse employment action." It contends that Baxter cannot establish a *prima facie* retaliation claim because there is a nine-month gap between her charge and her termination, and Baxter has offered no competent summary judgment evidence of a causal link between these events.

Causation between a protected activity and an adverse employment action "excludes only those links that are too remote, purely contingent, or indirect."[41] "[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity."[42] The Ninth Circuit has cautioned that a trial court's determination of whether temporalproximity leads to an inference of causation cannot be applied with mechanical simplicity

---

[39] *Westendorf v. West Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *see Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006).

[40] *See Westendorf*, 712 F.3d at 423 (finding that employee established *prima facie* retaliation claim based on fact that she had no record of insubordination prior to complaining about sexual harassment).

[41] *Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1192 (2011).

[42] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

and should take into consideration the circumstances of the case.[43]

Baxter filed her EEOC complaint in January 2010 and amended her charge in March 2010 to add a retaliation claim. *See* Docs. 36 at 5-6; 36-2 at 63-65, 90. The EEOC dismissed her charge on June 11, 2010. *See* Doc. 36-4 at 2. Baxter's employment was terminated, according to Spring Valley, in late September 2010. The approximately nine months between Baxter's EEOC charge and termination—or even the roughly three and a half months between the dismissal of the charge and the termination—would be insufficient to establish causation without something more.[44]

Other dates and circumstances surrounding Baxter's termination suggest that something more. For example, Baxter filed her administrative charges against Spring Valley in January 2010 and received her right-to-sue letter from the EEOC on June 11, 2010. The EEOC's dismissal letter gave her 90 days to sue. Doc. 36-4 at 4. Baxter's 90-day suit rights expired on September 9, 2010, just six days before Spring Valley purportedly mailed Baxter a certified letter informing her that her FMLA leave date had been moved up. *See* Doc. 36-1 at 23. Again, although Spring Valley claims to have contacted Baxter prior to this time, the letter to Baxter never references any prior communications or that the leave period was miscalculated; instead, it references an FMLA "extension" from an unidentified period running through September 21, 2010. Doc. 36-1 at 23. Taken together and viewed in the light most favorable to Baxter, these facts suggest a possible causal link sufficient to state a *prima facie* claim of discrimination and preclude summary judgment.

### b. *Legitimate non-discriminatory reason*

As Baxter is entitled to a presumption that Spring Valley retaliated against her, Spring Valley must again articulate a legitimate, non-discriminatory reason for taking the action it did. Spring Valley's articulated reason again hinges on the modification of her FMLA leave date, and it again lacks evidentiary legitimacy. *See supra* at 10-11. As the hospital has failed to overcome the

---

[43] *See Coszater v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003); *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 751 (9th Cir. 2010).

[44] *See, e.g.*, *Davis v. Team Electric Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008) (finding that three-day delay between dismissal of EEOC claim and termination was sufficiently proximate); *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (42 and 59-day gaps sufficient); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (gap of over two months was sufficient).

presumption of retaliation, I need not reach the third step in the *McDonald Douglas* test. Spring Valley's request for summary judgment on Baxter's retaliation claim is denied.

### 3. Baxter's Racial Discrimination Claim

Baxter's third claim for relief alleges that Spring Valley "refused to accommodate and/or enter into the interactive process and subsequently terminated" her because she is African American. Doc. 9 at 3-4. Spring Valley contends that Baxter has attempted to "bootstrap" her ADA claimd into a racial discrimination claim with no independent evidence of racial discrimination. Doc. 36 at 16. Thus, Spring Valley argues that Baxter's complaint fails to state a racial discrimination claim, which can now be disposed of under Rule 12(c).[45] Alternatively, it asks for summary judgment on this claim.

Assuming *arguendo* that Baxter's claim could survive a Rule 12(c) analysis, it cannot survive summary judgment because it fails the *prima facie* test. To state a § 1981 racial-discrimination claim, a plaintiff must offer proof that (1) she belongs to a class of persons; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) her employer treated her differently than a similarly situated employee who did not belong to the same protected class.[46] The parties do not dispute that the first and third factors are met, but Baxter has provided only unsubstantiated assertions—no competent evidence—that a similarly situated coworker of a different race was treated differently than she was, and I can find none in the admissible evidence before me. Unlike with her ADA and retaliation claims, the timing and circumstances surrounding Baxter's termination do not give rise to an inference that Spring Valley discriminated against Baxter on account of her race. Because Baxter has failed to meet at least one of the elements of her *prima facie* burden under § 1981, Spring Valley's request for summary

---

[45] Spring Valley fails to cite an applicable standard of review and proceeds to analyze Baxter's § 1981 claim under the Rule 56 standard. In its Reply, Spring Valley claims, *inter alia*, that Baxter's claim was barred by the applicable statute of limitations. Doc. 12 at 3. Although Title VII requires a plaintiff to first exhaust her administrative remedies by timely presenting her claims to the EEOC, there is no similar requirement for claims brought under 42 U.S.C. § 1981. *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1103-04 (9th Cir. 2008).

[46] *McDonnell-Douglas*, 411 U.S. at 802; *see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

judgment on her racial discrimination claim is granted.

### 4. Failure to Mitigate Damages

Finally, Spring Valley argues that, in the event any of Baxter's claims survive summary judgment, the court should conclude that Baxter failed to mitigate her damages by not seeking alternate employment, and she should be barred from recovery as a result. Doc. 36 at 17-18. Spring Valley alleges that Baxter has failed, despite repeated requests, to produce in discovery her alleged efforts to find replacement work; however, she did admit during her deposition that she applied for one job and utilized internet job boards to apply for other jobs. *See* Docs. 36 at 18 n.9; 36-3 at 23-29. Further, the Bailey declaration states that in Spring 2012 the hospital attempted to contact Baxter for a job interview, indicating that Baxter attempted to find work. Doc. 36-5.

Damages in employment discrimination actions, like all other types of actions, "require[] the claimant to use reasonable diligence in finding other suitable employment."[47] The burden of showing a failure to mitigate is on the employer.[48] To meet this burden, Spring Valley must demonstrate "that, based on undisputed facts in the record, during the time in question there were substantially equivalent jobs available, which [Baxter] could have obtained, and that [she] failed to use reasonable diligence in seeking one."[49]

Although the degree of Baxter's efforts to find employment may ultimately be dubious, they are sufficient to create a genuine issue of material fact whether Baxter's efforts, in context, were reasonable. Moreover, the "job interview" Spring Valley offered Baxter in the Spring of 2012—almost two years after Baxter was placed on leave and during the course of this litigation—does not adequately show that Baxter refused to look for employment, especially given the pendency and tenor of this litigation. *See* Doc. 50. Thus, Spring Valley's request for summary judgment as to Baxter's failure to mitigate damages is denied.

---

[47] *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982).

[48] *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995); *Picinich v. United Parcel Service*, 583 F. Supp. 2d 336, 340-41 (N.D.N.Y. 2008) (noting identical burden in ADA claim).

[49] *E.E.O.C. v. Farmer Brothers Co.*, 31 F.3d 891, 906 (9th Cir. 1994).

**Conclusion**

Accordingly, it is HEREBY **ORDERED** that Spring Valley's Motion for Summary Judgment [Doc. 36] is **GRANTED** in part and **DENIED** in part; summary judgment is granted in favor of Spring Valley Hospital on Baxter's third claim for relief (racial discrimination) only; it is denied in all other respects.

DATED: August 13, 2014

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE